UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KELLY C.,

                              Plaintiff,

v.                                                            5:18-CV-393
                                                               (TWD)

ANDREW SAUL,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,[1]

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
 *Attorney for Plaintiff*
300 South State Street
Suite 420
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.        ARIELLA R. ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
 *Attorney for Defendant*
26 Federal Plaza - Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Plaintiff Kelly C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Social Security Disability Insurance ("SSDI").

---

[1] Andrew Saul was sworn in as Commissioner of The Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

(Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed cross motions for judgment on the pleadings. (Dkt. Nos. 9, 12.) Oral argument was not heard. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. No. 4.) For the reasons discussed below, Plaintiff's motion for judgment on the pleadings is granted and the Court remands the Commissioner's decision with instructions to undertake a *de novo* review.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on April 2, 1967, and lives in East Syracuse, New York. On December 28, 2012, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning May 15, 2009. (Administrative Transcript at 113.)[2] In Plaintiff's application, she asserted she suffered from the following conditions: memory loss, left shoulder injury, left knee injury, right foot injury, and left-hand injury. (T. at 101.)

Plaintiff's application for benefits was denied on April 19, 2013. (T. at 165-69.) Thereafter, Plaintiff timely filed a written request for a hearing. (T. at 171.) A hearing was held on October 14, 2014, in front of Administrative Law Judge ("ALJ") Joseph L. Brinkley. (T. at 49-99.) Plaintiff appeared at the hearing with her attorney and testified. (*Id.*) On December 11, 2014, ALJ Brinkley issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act ("SSA"), since the alleged onset date. (T. at 114-30.) Plaintiff appealed ALJ Brinkley's decision and the Appeals Council ("AC") granted review. (T. at 136.) The AC

---

[2] The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns.

remanded the case after finding substantial evidence did not support ALJ Brinkley's residual functional capacity ("RFC") determination. (T. at 137-38.)

Thereafter, ALJ Lisa Martin conducted a new hearing on September 12, 2016. (T. at 8-48.) Plaintiff appeared with her attorney and testified along with Jacqueline Schabacker, a vocational expert ("VE"). (*Id.*) ALJ Martin issued a decision on December 7, 2016, finding Plaintiff was not disabled. (T. at 140-57.) Plaintiff appealed ALJ Martin's decision to the AC and the AC granted Plaintiff's request for review on November 20, 2017. (T. at 327-30.) On February 1, 2018, the AC issued a decision finding Plaintiff was not disabled. (T. at 1-4.) Plaintiff timely commenced this action challenging the Commissioner's final decision on April 2, 2018. (Dkt. No. 1.)

## II.     THE COMMISSIONER'S FINAL DECISION

As stated above, Plaintiff appealed ALJ Martin's December 7, 2016, decision to the AC and the AC granted review and subsequently issued a decision on February 1, 2018. (T. at 1-4.) Though the parties ignore this point,[3] the "final decision" in this action is the AC's decision dated February 1, 2018. *See* 20 CFR § 404.981 (noting "[t]he Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised"). Consequently, the decision before the Court to review pursuant to 42 U.S.C. § 405(g) is the AC's decision.

In its decision, the AC modified the date Plaintiff was last insured from March 31, 2016, to June 30, 2016. (T. at 5.) The AC then made "FINDINGS" and concluded Plaintiff was not

---

[3] Plaintiff misstated the procedural history of this case and noted the AC "denied review" on February 1, 2018. (Dkt. No. 9 at 4.) Likewise, Defendant never addressed the AC's decision in its brief. (Dkt. No. 12.)

disabled at any time through June 30, 2016. (*Id*. at 5-6.) Generally, the AC adopted ALJ Martin's reasoning and discussion of the evidence. (*Id*. at 5.) However, the RFC determination in the "FINDINGS" section of the AC's decision is different than the RFC in ALJ Martin's decision. (*compare* T. at 5 *with* T. at 148.) To wit, as described below, the AC adopted an RFC that is *less* restrictive than the RFC ALJ Martin prescribed:

| AC Decision – February 1, 2018 | ALJ Martin's Decision – December 7, 2016 |
|---|---|
| "[T]he claimant has the residual functional capacity to perform **light work**, as defined in 20 CFR 404.1567(b), except that: she can constantly use the upper extremities to handle, grasp, feel, and finger bilaterally; she can occasionally perform overhead reaching, pulling, and pushing with the bilateral upper extremities; she can occasionally stoop, towel, crouch, and climb stairs and ramps; she can never climb ladders, ropes, or scaffolds and never crawl; she should avoid concentrated exposure to extreme hot and cold temperatures, wetness, humidity, vibrations, and work hazards- such as dangerous, moving mechanical parts and unprotected heights; and she can be exposed to office level noise environment. From a mental standpoint, she was able to perform simple, routine, and repetitive tasks and could understand, remember, and complete simple work instructions."<br><br>T. at 5 (emphasis added) | "[T]he claimant has the residual functional capacity to perform a full range of **sedentary work** as defined in 20 CFR 404.1567(a), except as follows. The claimant needed a change of position opportunity as often as every 30 minutes for one to two minutes. The claimant could not perform any overhead reaching with the upper extremities, and was limited to frequent, but not constant, upper extremity reaching, handling, and fingering. The claimant needed to avoid climbing all ladders, ropes, and scaffolding, and all crawling, and was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling and crouching. The claimant needed to avoid all exposure to dangerous work hazards (including unprotected heights and exposed machinery) as well as all exposure to extreme heat, humid, and cold conditions. Additionally, the claimant was limited to moderate noise work environments. Overall, the claimant was limited to routine, simple tasks not requiring a fast assembly quota pace."<br><br>T. at 148 (emphasis added) |

This substantive difference impacts the Court's subsequent review because, as noted above, the Court is statute-bound to consider only the "*final decision*" of the Commissioner. 42 U.S.C. § 405(g) (providing that "[a]ny individual, after any *final decision* of the Commissioner of Social Security . . ., may obtain a review of *such decision* by a civil action . . ." (emphasis added)).

Accordingly, the pertinent issue in this case is whether substantial evidence supports the RFC in the AC's decision. The issue is *not*, as the parties discuss in their competing motions, whether substantial evidence supports ALJ Martin's RFC. *See* 42 U.S.C. § 405(g).

Here, the record does not contain substantial evidence to support the AC's conclusion that Plaintiff can perform light work. To that end, as discussed more fully below, the medical opinions in the record each prescribe significant limitations on sitting, walking, and standing. (T. 770-71 (Thomas Masten, M.D. ("Dr. Masten")); 499-500 (William Dibble, D.O. ("Dr. Dibble")); 476-77 (Elke Lorensen, M.D. ("Dr. Lorensen")).) Thus, the Court finds substantial evidence does not support the AC's RFC.

The Court recognizes it is possible the AC inadvertently added this RFC into its decision.[4] However, it is not the Court's role to speculate whether the RFC's inclusion in the final decision was a mistake or—if it was a mistake—to overlook such an error. Rather, the Court's task is to consider whether substantial evidence supports the Commissioner's *final decision*—which, in this case, means considering whether Plaintiff can perform less than a full range of "light work." Under these circumstances, the Court cannot affirm the Commissioner's decision because substantial evidence does not support an RFC for light work.[5]

## III. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT ALJ MARTIN'S RFC

Even were the Court to overlook the AC's RFC, the Court finds substantial evidence does not support the RFC noted in ALJ Martin's decision which provides she can perform less than the full range of sedentary work. (T. at 148.)

---

[4] For example, the AC purports to agree with ALJ Martin's "findings under steps 1, 2, 3, 4 and 5," but then inexplicitly memorializes a different RFC in its "FINDINGS." (T. at 5.)

[5] Ironically, the RFC in the AC's decision is identical to the RFC ALJ Brinkley originally determined in his 2014 decision (T. at 122), that the AC found substantial evidence did not support (T. at 136-139).

SSA regulations state that, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.927(a). As the Second Circuit has recognized, "the concept of sedentary work contemplates substantial sitting." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)); *see also* SSR 96-9P, 1996 WL 374185, at *3 (in a full range of sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday"). Thus, "[t]he ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work." *Koseck v. Sec'y of Health and Human Servs.*, 865 F. Supp. 1000, 1013 (W.D.N.Y. 1994) (citing *Ferraris*, 728 F.2d at 586-87).

Plaintiff argues ALJ Martin did not consider Plaintiff's ability to sit during a work-day as it relates to her ability to perform sedentary work. (Dkt. No. 9 at 24.) To that end, she contends ALJ Martin failed to appropriately weigh the medical evidence regarding her physical impairments and consequently the RFC is inconsistent with the medical evidence and the medical opinions of her treating physicians: Dr. Masten and Dr. Dibble.

Dr. Masten reported Plaintiff could only sit or stand approximately ten minutes before having to adjust position. (T. at 770.) He noted Plaintiff used a scooter at home to move around and had difficulty ambulating from the parking lot. (*Id*. at 770-71.) Dr. Masten indicated Plaintiff's prognosis was "guarded." (*Id*. at 769.) He opined Plaintiff could sit or stand/walk no more than two hours in an eight-hour workday. (*Id*. at 770.)

Similarly, Dr. Dibble opined Plaintiff would not be able to sit or stand/walk for more than two hours total in an eight-hour workday. (*Id*. at 500.) He also noted Plaintiff could only sit for

6

five minutes before needing to stand up and could stand for only five minutes before needing to sit. (*Id*. at 499-500.) Dr. Dibble explained Plaintiff had "pain in the neck, [bilateral upper extremity], lower back, [and bilateral] feet, that is constant, that is affected by activity and prolonged positions that changes intensity." (*Id*. at 498.)

Plaintiff argues the reported restrictions from these opinions related to sitting demonstrate she is incapable of performing sedentary work. Opinions from her treating physicians, Dr. Masten and Dr. Dibble, "as to the nature and severity of the impairment[,] [are] given 'controlling weight' so long as "[they are] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. *See* 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)–(6).

ALJ Martin gave "some weight" to Dr. Masten's opinion, and "little weight" to Dr. Dibble's opinion. (*Id*. at 154-55.) Notably, however, ALJ Martin did not provide any reasons for why she rejected Dr. Dibble's and Dr. Masten's opinions related to sitting but rather focused her critique on the limitations related to Plaintiff's upper extremities and hands. (*See id*.)

7

In rejecting Dr. Dibble's opinion, ALJ Martin stated it was not consistent with the evidence in the record "including Dr. Dibble's treatment notes." (*Id*. at 154.) The examples ALJ Martin provided, however, each relate to Plaintiff's upper extremities, not Plaintiff's ability to sit or her lower back. (*Id*. (noting Plaintiff's strength in her upper extremities, negative Surplings test, and resolved C7 radicular symptoms).) Likewise, ALJ Martin rejected Dr. Masten's opinion without considering the restriction on Plaintiff's ability to sit but instead focused on his assessment relative to her ability to lift objects. (*Id*. at 155 (describing treatment related to Plaintiff's hand surgery).)

The Court finds ALJ Martin failed to properly consider Dr. Dibble's and Dr. Masten's opinions with respect to Plaintiff's ability to sit. *Koseck*, 865 F. Supp. at 1013 (explaining "[t]he ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work" (citation omitted)). Though the Court recognizes Dr. Dibble's and Dr. Masten's opinions are non-narrative check-mark-type forms and potentially subject to collateral attack, here, ALJ Martin did not even attempt to reconcile these opinions as they related to Plaintiff's ability to sit. *Cahill v. Colvin*, No. 12 CIV. 9445, 2014 WL 7392895, at *16 (S.D.N.Y. Dec. 29, 2014) (noting that "[a]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error" (internal citation omitted)). Thus, ALJ Martin's purported justifications found in her decision are not "good reasons" to discredit Dr. Dibble's and Dr. Masten's assessed limitations related to Plaintiff's ability to sit for extended periods. *See Smith v. Comm'r of Soc. Sec.*, No. 5:17-CV-0488, 2018 WL 1684337, at *5 (N.D.N.Y. Apr. 5, 2018) (stating "[t]he failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand" (internal quotation marks and citation omitted)).

Moreover, there is ample objective evidence[6] in the record supporting Dr. Dibble and Dr. Masten's opinions. To wit, a July 2014 MRI of Plaintiff's lumbar spine showed left side facet arthrosis at the L4-5 level, and Plaintiff was referred for pain management and physical therapy. (T. at 671.) That MRI further noted degenerative disease at L2-3 and L4-5 and hallux at L2-3 on the left side. (*Id*. at 748.) Furthermore, the 2014 MRI showed right foraminal narrowing at L2-3 and left neuroforaminal narrowing related to disc bulge and facet hypertrophy. (*Id*.) She is also noted as having degenerative arthritis in her low back that was aggravated after her anterior cervical discectomy and fusion. (*Id*. at 677.) Plaintiff also had an MRI in 2015 that noted severe bilateral facet arthropathy with ligamentum flavum thickening left more than right. (*Id*. at 753-54.) The 2015 MRI report indicated that the issues in her lower back had increased since the previous MRI just a year earlier. (*Id*. at 754.) To treat her back pain, Plaintiff received facet injections in December 2014 and February 2015, and epidural blocks in May, August, and September 2015. (*Id*. at 754-61, 764-67.)[7] Thus, there is overwhelming medical evidence

---

[6] In addition, there are several instances in the record where Plaintiff's subjective pain manifested itself. For instance, during physical therapy, Plaintiff's provider noted she was "sitting in the waiting area, consistently shifting weight and standing[.]" (T. at 697.) Notably, in her physical therapy records, Plaintiff consistently complained of severe lower back pain. (T. at 695, 700, 704, 717.) Plaintiff also had to get up and move around during the hearing on September 12, 2016, because of back pain. (T. at 26.)

[7] The only other medical opinion regarding Plaintiff's physical abilities was from consultative examiner, Dr. Lorensen. She noted, in February 2013, Plaintiff had an abnormal gait and favored her left leg. (T. at 476.) She also reported Plaintiff was unable to walk on her heels and toes and cannot squat. (*Id*.) Dr. Lorensen diagnosed Plaintiff with, among other things, "[r]ight lower extremity weakness." (*Id*. at 477.) For her medical source statement, Dr. Lorensen opined Plaintiff has "moderate to marked restrictions for standing, ambulating, and climbing stairs"; "marked restrictions for pushing, pulling and reaching with the left arm"; and "marked restrictions to handling small objects with the left hand." (*Id*.) ALJ Martin adopted Dr. Lorensen's opinion that Plaintiff had "moderate to marked restrictions for standing, ambulating, and climbing stairs," but determined that such a restriction supports a sedentary RFC. (*Id*. at 154.) Dr. Lorensen did not remark on her opinion relative to Plaintiff's ability to sit. The Court notes her opinion also pre-dates Plaintiff's more aggressive treatment for low back pain that began in 2014.

consistent with a limitation in sitting which would foreclose Plaintiff's ability to do sedentary work, especially after 2014.

Accordingly, even were the Court to consider the RFC articulated in ALJ Martin's decision, it would conclude she failed to properly consider evidence related to Plaintiff's ability to sit and rather assumed—with no record support—that Plaintiff was able to do so in a manner that is consistent with sedentary work. Therefore, the Court would find substantial evidence does not support ALJ Martin's RFC.

## IV. REMAND

As discussed above, the Court finds substantial evidence does not support the final decision of the Commissioner. Specifically, the AC's RFC erroneously concluded that Plaintiff could perform "light work" and the record establishes that Plaintiff is unable to perform that RFC. Therefore, it is appropriate to remand to undertake a *de novo* review including a proper evaluation of Plaintiff's treating physicians' opinions.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of Plaintiff's residual functional capacity and other further proceedings, consistent with this Decision and Order.

Dated: August 19, 2019

    Syracuse, New York

_Thérèse Wiley Dancks_
United States Magistrate Judge